UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

| | |
|---|---|
| JOHN CARL NUNLEY #258443, ) | |
| ) | |
| Plaintiff, ) | Case No. 2:06-cv-122 |
| ) | |
| v. ) | HON. R. ALLAN EDGAR |
| ) | |
| JERI-ANN SHERRY, et al., ) | |
| ) | |
| Defendants. ) | **OPINION** |
| _____) | |

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) ("PLRA"), "no action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Because Plaintiff has failed to demonstrate exhaustion of available administrative remedies on some of his claim, the Court will dismiss those claims without prejudice.

**Discussion**

I.   Factual allegations

Plaintiff is presently incarcerated at the Standish Correctional Facility. In his *pro se* complaint, he sues Warden Jeri-Ann Sherry, Deputy Warden Greg McQuiggin, Assistant Deputy Warden D. Maclaren, and Resident Unit Manager G. Lemon, all of whom were employed at the Chippewa Correctional Facility (URF) during the pertinent time period.

Plaintiff claims that on April 15, 1999, while he was confined at URF, he was assaulted by an unknown prisoner with a razor. On May 28, 1999, Plaintiff was again assaulted with

a razor by an unknown prisoner. On May 11, 2001, Plaintiff requested placement in protective segregation because he had been told by another prisoner that he would be stabbed. On May 16, 2001, Plaintiff was transferred to the Oaks Correctional Facility for placement in their long term protection unit. On June 18, 2002, while in long term protection, Plaintiff was transferred to segregation for a major misconduct ticket. Plaintiff was waiting to earn his release from punitive segregation so that he could return to long term protection. On October 30, 2003, all of the prisoners in Oaks long term protection unit were bused to Bellamy Creek Correctional Facility because Oaks protection unit was being closed. However, the protection prisoners who were in punitive segregation remained in segregation at Oaks until they could be managed in a protection unit.

On April 8, 2005, Plaintiff was transferred to the segregation unit at URF as part of a prisoner swap. On May 5, 13, 16 and 24 of 2005, and again on June 6, 2005, Plaintiff sent kites to Defendants Sherry, McQuiggin, Lemon, and Maclaren, letting them know that he needed protection and giving them the names of prisoners at URF who had threatened him. Plaintiff also explained that he had previously requested long term protection. On May 6, 2005, Plaintiff received an administrative segregation review signed by Defendants Greg McQuiggin and Lemon, which recommended that he be reclassified to general population. On May 19, 2005, Plaintiff wrote a step I grievance, letting Defendants know that religious members of the Mobites and Malantics had been putting "hits" out on Plaintiff for years. In addition, Plaintiff stated that the family of the "guy [Plaintiff] is in prison for" has also put "hits" out on Plaintiff.

Plaintiff alleges that on June 6, 2005, Defendant Lemon responded to his step I grievance by stating that there was no plan to place Plaintiff in the general population and that Plaintiff would be provided with a request form for placement in protective segregation. On June

17, 2005, Sergeant Mcleod gave Plaintiff the request for protection form, and Plaintiff gave Mcleod a two page statement listing the names of all the prisoners who had threatened him, as well as their cell numbers. Case Manager Adair asked Sergeant Mcleod to do an investigation and forward a recommendation to Defendant McQuiggin. On June 20, 2005, Defendant Mclaren denied Plaintiff's request for protection and Officer Elliott told Plaintiff to "cuff up" because he was being taken to general population. On July 6, 2005, Defendant Sherry reviewed Plaintiff's step II grievance and denied him protection, stating that there was no violation of policy.

On July 29, 2005, Plaintiff was given a second order to "cuff up" to go to general population. Plaintiff complied with the order and was placed in the general population. On August 6, 2005, Plaintiff was on his way to breakfast, when he was assaulted by an unknown prisoner with a razor. Plaintiff suffered an injury to the back of his head. Plaintiff was taken to health care and was later placed in segregation for his own protection. Plaintiff claims that Defendants' failure to protect him violated his constitutional rights. For relief, Plaintiff requests compensatory damages, as well as declaratory and injunctive relief.

## II.   Lack of exhaustion of available administrative remedies

Plaintiff has failed to sufficiently allege and show exhaustion of available administrative remedies with regard to Defendant Maclaren. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter*, 534 U.S. at 516; *Booth*, 532 U.S. at 741. A district court must enforce the exhaustion requirement sua sponte.

*Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.), *cert. denied*, 525 U.S. 833, 119 S. Ct. 88 (1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).

A prisoner must allege and show that he has exhausted all available administrative remedies and should attach to his § 1983 complaint the administrative decision disposing of his complaint, if the decision is available. *Brown*, 139 F.3d at 1104. In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome so that the court may determine what claims, if any, have been exhausted. *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir.), *cert. denied*, 531 U.S. 1040, 121 S. Ct. 634 (2000). A prisoner must specifically mention the involved parties in the grievance to make prison officials aware of the problems so that the prison has a chance to address the claims before they reach federal court. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001).

Plaintiff's claims are the type of claims that may be grieved through the three-step prison grievance process. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ E (may grieve "alleged violations of policy and procedure or unsatisfactory conditions of confinement") (effective 4/28/03); ¶ R (may grieve alleged "racial or ethnic discrimination or staff brutality or corruption" directly to Step III) (effective 4/28/03)**.**

The burden to allege and show exhaustion belongs to Plaintiff. *See* 42 U.S.C. § 1997e(a); *Knuckles El*, 215 F.3d at 642; *Brown*, 139 F.3d at 1104. This requirement is "so that the district court may intelligently decide if the issues raised can be decided on the merits." *Knuckles El*, 215 F.3d at 642. Plaintiff attaches a copy of his step I, II and III grievances, as well as the responses to his grievances as exhibits to his complaint. A review of Plaintiff's step I grievance,

reveals that he named Defendants Sherry, McQuiggin, and Lemon[1] in the grievance, but failed to name Defendant Maclaren. In order to properly exhaust Michigan Department of Corrections grievance procedures, a prisoner must raise each of his claims for the first time at Step I. *Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003). An allegation that remedies have been exhausted is not enough, as a plaintiff must provide the decisions reflecting the administrative disposition of his claims or other evidence showing that he has exhausted his remedies. *Williams v. McGinnis*, No. 98-1042, 1999 WL 183345, at *1 (6th Cir. March 16, 1999). The Sixth Circuit has found that the district court is not required to hold evidentiary hearings on the issue of exhaustion or "spend a lot of time with each case just trying to find out whether it has jurisdiction to reach the merits." *See Knuckles El*, 215 F.3d at 642. Accordingly, the court finds that Plaintiff failed to exhaust his remedies against Defendant Maclaren.

It is not clear whether Plaintiff may still grieve his claims. Under the policy of the prison, complaints must be resolved expeditiously, and complaints may be rejected as untimely. *See* Policy Directive 03.02.130, ¶¶ G-3, T, V. The Sixth Circuit held that an inmate cannot claim that "he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) (citing *Wright v. Morris*, 111 F.3d 414, 417 n.3 (6th Cir.), *cert. denied*, 522 U.S. 906 (1997).

Because the exhaustion requirement is no longer discretionary, but is mandatory, the Court does not have the discretion to provide a continuance in the absence of exhaustion. *See Wright*, 111 F.3d at 417. Rather, dismissal of the unexhausted claims without prejudice is

---

[1] Plaintiff names the parties as Resident Unit Manager, Deputy Warden and Warden in his grievance. *See* Exhibit 10 to Plaintiff's complaint.

appropriate when a prisoner has failed to show that he exhausted available administrative remedies. *See Freeman*, 196 F.3d at 645; *Brown*, 139 F.3d at 1104; *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997); *Bradford v. Moore*, No. 97-1909, 1998 WL 476206, at *1 (6th Cir. Aug. 3, 1998). Accordingly, the Court will dismiss Plaintiff's claims against Defendant Maclaren without prejudice.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court will dismiss Plaintiff's action, in part, without prejudice because he has failed to show exhaustion as required by 42 U.S.C. § 1997e(a).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the appellate filing fee in one lump sum.

An Order consistent with this Opinion will be entered.

Dated:   6/16/06                                         */s/ R. Allan Edgar*
                                                         R. ALLAN EDGAR
                                                         UNITED STATES DISTRICT JUDGE