UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN NUNLEY,

        Plaintiff,

v.

                                      Case No. 2:06-cv-122

                                      HON. R. ALLAN EDGAR

JERI-ANN SHERRY, et al.,

        Defendants.

_____/


## REPORT AND RECOMMENDATION

Plaintiff, a prisoner currently confined at the Standish Maximum Correctional Facility, filed this prisoner 42 U.S.C. § 1983 action against Warden Jeri-Ann Sherry, Deputy Warden Greg McQuiggin, Assistant Deputy Warden D. Maclaren, and Resident Unit Manager G. Lemon, all of whom were employed at the Chippewa Correctional Facility (URF) during the pertinent time period. Plaintiff's claims against Defendant Maclaren were dismissed because Plaintiff had not exhausted his available administrative remedies as required by 42 U.S.C. § 1997e(a) (Docket #4). It is recommended that the Court vacate the dismissal of defendant Maclaren and consider defendant Maclaren's actions on the merits.

Plaintiff claims that on April 15, 1999, while he was confined at URF, he was assaulted by an unknown prisoner with a razor. On May 28, 1999, Plaintiff was again assaulted with a razor by an unknown prisoner. On May 11, 2001, Plaintiff requested placement in protective segregation because he had been told by another prisoner that he would be stabbed. On May 16, 2001, Plaintiff was transferred to the Oaks Correctional Facility (ECF) for placement in their long

term protection unit.  On June 18, 2002, while in long term protection, Plaintiff was transferred to segregation for a major misconduct ticket.  Plaintiff was waiting to earn his release from punitive segregation so that he could return to long term protection.  On October 30, 2003, all of the prisoners in the long term protection unit at ECF were bused to Bellamy Creek Correctional Facility because the protection unit at ECF was being closed.  However, the protection prisoners who were in punitive segregation remained in segregation at ECF until they could be managed in a protection unit.  On April 8, 2005, Plaintiff was transferred to the segregation unit at URF as part of a prisoner swap.  On May 5, 13, 16 and 24, and June 6, 2005, Plaintiff sent kites to Defendants Sherry, McQuiggin, Lemon and Maclaren, maintaining that he needed protection and providing the names of prisoners at URF who had threatened him.  Plaintiff also explained that he had previously requested long term protection.  On May 6, 2005, Plaintiff received an administrative segregation review signed by Defendants McQuiggin and Lemon, which recommended that Plaintiff be reclassified to general population.  On May 19, 2005, Plaintiff wrote a step I grievance, maintaining that religious members of the Mobites and Malantics had been putting "hits" out on Plaintiff for years.  In addition, Plaintiff stated that the family of the "guy [Plaintiff] is in prison for" had also put "hits" out on Plaintiff.  Plaintiff alleges that on June 6, 2005, Defendant Lemon responded to his step I grievance by stating that there was no plan to place Plaintiff in general population and that Plaintiff would be provided with a request form for placement in protective segregation. On June 17, 2005, Sergeant Mcleod gave Plaintiff the request for protection form, and Plaintiff gave Mcleod a two page statement listing the names of all the prisoners who had threatened him, as well as their cell numbers. Case Manager Adair asked Sergeant Mcleod to do an investigation and forward a recommendation to Defendant McQuiggin.

On June 20, 2005, Defendant Maclaren denied Plaintiff's request for protection and Officer Elliott told Plaintiff to "cuff up" because he was being taken to general population. On July 6, 2005, Defendant Sherry denied Plaintiff's step II grievance, stating that there was no violation of policy. On July 29, 2005, Plaintiff was given a second order to "cuff up" to go to general population. Plaintiff complied with the order and was placed in general population. On August 6, 2005, Plaintiff was on his way to breakfast when he was assaulted by an unknown prisoner with a razor. Plaintiff suffered a "superficial scratch" to the back of his head. Plaintiff was taken to health care and was later placed in segregation for his own protection. Plaintiff claims that Defendants' failure to protect him violated his constitutional rights under the Eighth Amendment. For relief, Plaintiff requests compensatory damages, as well as declaratory and injunctive relief.

Presently before the Court is Defendants' Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6); or in the alternative for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed

- 3 -

in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants request that the court dismiss this action for failure to exhaust grievance remedies. Defendants base this motion on Plaintiff's complaint. Defendants argue that because Plaintiff failed to exhaust his claims against Defendant Maclaren, his entire case should be dismissed under the total exhaustion rule of *Jones-Bey v. Johnson*, 407 F.3d 801 (6th Cir. 2005). After the filing of Defendants' motion for summary judgment, the United States Supreme Court issued its decision in *Jones v. Bock*, 127 S. Ct. 910 (2007). In *Jones*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." Moreover, the burden is on Defendants to show that Plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. Exhaustion is no longer a pleading requirement. The Supreme Court also rejected total exhaustion, holding that when a defendant establishes lack of exhaustion as an affirmative defense, only the unexhausted claim may be dismissed. Accordingly, it is inappropriate to dismiss a case for failure to exhaust on a Rule 12(b) motion unless the plaintiff states in his complaint that he failed to exhaust his grievances against a

defendant on a particular claim. The fact that Plaintiff attaches grievances to his complaint that may not show exhaustion of every issue presented is of no consequence because Plaintiff has no duty to show exhaustion.  The burden lies solely with a defendant to show that Plaintiff failed to exhaust grievance remedies.  It is each defendant's responsibility to support a motion for summary judgment with specific reasons why a issue should be dismissed for failure to exhaust.  A general statement that Plaintiff failed to exhaust his grievance remedies will not be sufficient.  Accordingly, because Defendants have not met their burden, their motion to dismiss should be denied on the exhaustion issue.

Defendants next assert that they are entitled to qualified immunity on Plaintiff's Eighth Amendment claim because they were not personally involved in the alleged constitutional violation and Plaintiff has not stated a claim against them for which relief can be granted. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).  When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted.  *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429.  If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established.  *Turner*, 119 F.3d at 429.  These are both purely legal questions. The immunity issue should not be resolved if there are factual

- 5 -

disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991).

Under the Eighth Amendment, a prison official has a duty to protect an inmate from violence caused by other prisoners. *Wilson v. Sieter*, 501 U.S. 294, 303 (1991); *Nelson v. Overberg*, 999 F.2d 162, 165 (6th Cir. 1993); *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *Roland v. Johnson*, 856 F.2d 764 (6th Cir. 1988); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citations omitted). Recognizing that a prison official has an obligation to protect an inmate from assault by another inmate, the Supreme Court defined deliberate indifference as requiring a showing that the prison official consciously disregarded a substantial risk of serious harm to plaintiff. *Id.* at 839.  The court stated:

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as infliction of punishment.

*Id.* at 837.  Thus, in order to support a claim that a prison official failed to protect plaintiff, two conditions must be satisfied:  (1) the inmate must show that a substantial risk of harm was present and (2) that the defendants, having knowledge of that risk, possessed a culpable state of mind. *Id.* In order to support an Eighth Amendment claim, plaintiff must establish "something more than a lack of ordinary due care, inadvertence, or error; the conduct must instead be 'obdurate' or 'wanton'

- 6 -

-- exhibiting recklessness or callous neglect." *Id.* at 165.  *See also Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992); *Walker v. Norris*, 917 F.2d 1449 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 881 (6th Cir. 1988).  An error of judgment does not subject a prison official to liability.  *Jeffers v. Heavrin*, 10 F.3d 380, 381 (6th Cir. 1993) (errors of judgment are shielded by qualified immunity); *Marsh v. Arn*, 937 F.2d at 1069.

However, a party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct.  *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982).  *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Defendants do not contest at this stage that a risk of serious harm existed.  Rather, they argue that Plaintiff has made no showing that any Defendant personally participated in the denial of Plaintiffs' request to be reclassified to protective segregation. Furthermore, Defendants claim that Plaintiff has not demonstrated that any defendant manifested deliberate indifference to Plaintiff's safety. Defendants thus argue that they are entitled to qualified immunity because Plaintiff has failed to state a claim for which relief can be granted.

Plaintiff sent  kites to Defendant Lemon indicating his concerns in May of 2005. Plaintiff claims that Defendant Lemon denied him protection. However, a determination to place a prisoner in protective segregation is made by a Security Classification Committee (SCC) , not a Resident Unit Manager. *See* MDOC Policy Directive No. 04.05.120(U). On May 6, 2006, Defendant Lemon signed an Administrative Segregation Behavior Review (ASBR) recommending that Plaintiff be reclassified to general population. This review addressed Plaintiff's placement in administrative

segregation, and concerned entirely different issues than a request to be placed in protective segregation.  When Plaintiff filed a grievance alleging that he was being "denied protection," Defendant Lemon provided him with the paperwork to begin an administrative review of Plaintiff's request.  Defendant Lemon never denied a formal request by Plaintiff for placement in protective segregation.  Plaintiff has produced no evidence or alleged any facts from which an inference could reasonably be drawn that Defendant Lemon acted with deliberate indifference to any risk of harm faced by Plaintiff.

Defendant McQuiggin received Plaintiff's kites and responded that Plaintiff could not be placed in protective segregation until he had earned his release from administrative segregation. As a practical matter, Plaintiff's continued classification in administrative segregation also served any protective needs he may have had.[1] On May 6, 2006, Defendant McQuiggin signed Plaintiff's ASBR, recommending that Plaintiff be reclassified out of administrative segregation.  As discussed, this act is not an overt denial of protection, particularly since Plaintiff remained in administrative segregation following the filing of the ASBR.  Defendant McQuiggin received a memo from Sgt. Bruce Mcleod regarding Plaintiff's request for reclassification to protective segregation, which he then forwarded to Deputy Warden Maclaren.  Defendant McQuiggin did not deny Plaintiff's request for reclassification.  Plaintiff has produced no evidence of any actions from which deliberate indifference on the part of Defendant McQuiggin could be inferred.

---

[1] *See* MDOC Policy Directive No. 04.05.120(H)(3) (A prisoner classified to protective segregation at a facility which does not have such housing may be placed in Temporary Segregation units until transfer; MDOC Policy Directive No. 04.05.120(V) (A prisoner classified to protective segregation shall be placed in protective segregation cells or "other appropriate housing" pending transfer.

Defendant Sherry's only involvement in this matter was her receipt of the initial kites sent by Plaintiff regarding his concerns, and her denial of his Step II grievance. The denial of the grievance was proper because Plaintiff had not alleged or proven any violation of MDOC policy. The Step II grievance reviewed by Defendant Sherry cannot function as an appeal from Defendant Maclaren's denial of Plaintiff's request for protective segregation and, thus, Defendant Sherry did not deny any request for protection. Plaintiff has merely made a conclusory allegation that Defendant Sherry's refusal to reverse Defendant Maclaren's decision demonstrates deliberate indifference. This contention is not supported by evidence and is without merit. Moreover, Plaintiff has failed to show that Defendant Maclaren acted improperly. Defendant Maclaren denied Plaintiff's request for protective custody on June 20, 2005, because "prisoner cannot name specific threat has not tried G.P. since being transferred here." Under these circumstances, defendant Maclaren's actions were reasonable.

In conclusion, Defendants were not personally involved in denying Plaintiff's formal request for placement in protective segregation. The named Defendants followed prison procedures correctly, responded appropriately to Plaintiff's concerns, and at no time manifested deliberate indifference to any threat to Plaintiff's safety. Plaintiff has failed to state a claim on which relief can be granted. Accordingly, Defendants are entitled to qualified immunity on Plaintiff's Eighth Amendment claims.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' Motion for Summary Judgment. Accordingly, it is recommended that Defendants' Motion for Summary Judgment (Docket #16) be granted and this case be dismissed in its entirety.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   July 23, 2007

- 10 -